E-FILED
Tuesday, 08 August, 2006 04:17:04 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE PARKS,       )<br>                     )<br>    Plaintiff,    )<br>                     )<br>    v.               )<br>                     )<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security )<br>Administration,     )<br>                     )<br>    Defendant.   ) | Case No. 05-4042 |

## O R D E R

This matter is now before the Court on Plaintiff's Motion for Summary Reversal and the Commissioner's Motion to Affirm. For the reasons set forth below, Plaintiff's Motion for Summary Reversal [# 11] is DENIED, and the Commissioner's Motion to Affirm [#16] is GRANTED.

### BACKGROUND

Plaintiff, Willie Parks ("Parks"), was 19 years' old at the time of his administrative hearing. (R152) He does not remember the highest level of school that he finished, but he doesn't think that he finished the eighth grade. (R152, R156) He lives in an apartment with his girlfriend. (R158) In the past, Parks worked for one day as a packager at Proctor and Gamble. (R154-55)

In October 2002, Parks was denied entry into a GED class because his reading scores were too low. (R100) He then applied to receive tutoring through Black Hawk

Technology Center but was denied admission to the program because his reading and math abilities tested at a second-grade level, and that organization did not have the special education services to address those needs. (R101)

On December 14, 2002, Parks attended a consultative psychological evaluation by Dr. Michael Stempniak. (R125-28) At that time, he lived with his mother, was taking no medication, and appeared to be healthy. Id. Parks indicated that he could dress and feed himself, as well as take care of his own personal hygiene. (R127) He also helped around the house by taking out the garbage, dusting, and cleaning his room. Id. Other activities included playing basketball and other games with his friends. Id. Dr. Stempniak noted that Parks' speech was brief, concrete, and direct, with average psychomotor activity and normal thought processes. Id. His memory was in the low-average range, and intelligence testing revealed a verbal IQ of 72, a performance IQ of 65, and a full scale IQ of 66. (R125) Dr. Stempniak diagnosed Parks with mild mental retardation. (R128) Other than acknowledging some emotional immaturity and some aggressiveness when Parks believes that people are picking on him or pressing him to do something difficult, the only specific limitations noted by Dr. Stempniak were an inability to manage his own funds and an inability to concentrate on tasks that involved three or more steps. Id.

On January 9, 2003, the record was evaluated by Kirk Boyenga, a consulting psychologist. (R135) Dr. Boyenga opined that Parks had mild mental retardation. Id. While the impairment qualified as "severe" under the Agency guidelines, it did not meet or equal any listed impairment. Id. Based on his IQ scores, lack of education, and statements from his mother, Parks was found to have a marked limitation in acquiring and using information and a less than marked limitation in attending and completing tasks. (R137)

Dr. Boyenga found no limitations in interacting and relating with others, moving about and manipulating objects, caring for himself, or with respect to health and physical well-being. (R137-39)

Although at one time he saw a psychiatrist at the Robert Young Mental Health Center, Parks has not received treatment there since filing the present claim in October 2002 because they were "getting on [his] nerves." (R157) He spends his time "just sitting around at home." (R158) Parks has never had the opportunity to handle money, use a checking account, or anything like that, but he can read a little bit. Id.

Parks was originally granted supplemental security income payments (SSI) as a child in October 1994 as a result of borderline intelligence and an attention deficit hyperactivity disorder. In late 1997, the Agency scheduled a review to determine whether his non-permanent disability continued to be disabling. Because he was not receiving any medical care at that time, the Agency arranged for Parks to be examined by a consulting physician. He did not appear for the scheduled examinations on two occasions, and his representative payee did not respond to requests to contact the Agency. As a result of these repeated failures, his SSI payments were discontinued in March 2002.

On October 8, 2002, Parks' mother submitted a new application for SSI benefits on her son's behalf. (R54) His application was denied both initially and on reconsideration. (R32, R37) Parks requested a hearing before an administrative law judge ("ALJ"). (R42) A hearing was held before ALJ Robert Rogers on November 3, 2004, at which Parks, who was represented by counsel, and vocational expert ("VE") George Paprocki appeared and gave testimony. (R149-65)

During the hearing, Parks testified that he has only worked one day in his life and was let go from that job because he was not getting along with his peers, was "zoning off", and was walking away from his job unexpectedly. (R154-55) He spends his time sitting around at home. (R158)

After establishing that he had reviewed the evidence of record, the VE testified that Parks had no past relevant work. The ALJ presented the VE with the following hypothetical:

> Assume a hypothetical person of the same age, education, and work experience as the Claimant, i.e., none. Further assume the person has no impairment based exertional limits on his ability to work. He can understand, remember, and carry out one- and two-step simple job instructions in tasks but not detailed or complex job instructions or tasks. He should have a task-oriented job. Are there any jobs in the national economy that person could perform?

(R160) The VE responded that the hypothetical person could perform medium work as a groundskeeper, light work as a molding machine tender, and light work as a housekeeping cleaner. (R161) Respectively, these jobs represent 345,000, 100,000, and 500,000 jobs in the national economy. Id. If the additional limitation of an inability to work at a fast-paced job was added, then the hypothetical person could still perform work as a groundskeeper or housekeeping cleaner, as well as medium work as a laundry worker II, for which there are 130,000 jobs in the national economy. Id.

Parks' attorney then amended the hypothetical.

> The same hypothetical as the first, the same restrictions, no physical limits, the same age and education, same restrictions limiting him to one to two step [instructions], carrying out and understanding, no detailed, no complex work, should be a task-oriented job with the following additional restrictions. Can be aggressive when he perceives he's being picked on. He

>  cannot handle — well, does not understand units of measurement or time. Has little understanding of social rules and customs. . . . He would be unreliable in terms of his response if he had interactions at work with the supervisors, co-workers, or peers. There would be a potential there that he would display some aggressiveness and some unwillingness to accede to the demands of his supervisor or to cooperate with co-workers on a reliable basis. If we stop there, does that change any of the responses to the first two questions?

(R162-63) The VE asked for clarification of how frequently the hypothetical person would become aggressive or unreliable and was told to assume that this would affect his work performance approximately 50% of the time. (R163) With that kind of frequency, the VE concluded that the individual would be competitively unemployable. Id.

On January 27, 2005, the ALJ issued his decision. (R10-25) The ALJ found that Parks has mild mental retardation, which is "severe" within the meaning of 20 CFR 416.924(c). (R23) The ALJ determined, however, that Parks does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P. Id. Nor does he have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning, or functionally equal the severity of the listings. (R24)

After considering the medical evidence in the record and relevant credibility factors as a whole, the ALJ found the degree of Parks' complaints to be credible only to the extent that they were supported and substantiated by the record. Id. The ALJ determined that Parks was not under a disability at any time after the alleged onset date and had no impairment-based exertional limitations on his ability to perform work. Id. Although he cannot carry out detailed or complex job instructions or tasks, he can understand,

remember and carry out one and two-step simple job instructions and tasks.  Id.  He cannot work at a fast-paced job, but can perform a task-oriented job.  Id.

After determining that Parks had no past relevant work, the ALJ decided the case at step five after finding that he retained the residual functional capacity to perform a significant range of work at all exertional levels, for which there were a total of 975,000 such jobs in the national economy.  (R24)  Based on a demonstrated exertional capacity for a significant range of unskilled work, Parks' age, education, work experience, and residual functional capacity, the ALJ concluded that Parks was not under a disability as defined in the Social Security Act (the "Act") either as a child or as an adult.  (R25)

Parks submitted a Request for Review of Hearing Decision.  (R9)  On March 29, 2005, the Appeals Council declined review of his claim, and the ALJ's decision became the final decision of the Commissioner.  (R5-7)  This appeal followed.  The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

In order to be entitled to DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled.  Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits.  *See* 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C.

§ 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v.

Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

In his appeal, Parks argues: (1) that he was denied due process, and his original claim should be reopened; (2) failure to provide a complete record requires a remand; (3) he satisfied the requirements for Childhood Disability prior to August 27, 2003; and (4) he has satisfied the requirements for Adult Disability since August 27, 2003. Each of these arguments will be addressed in turn.

I.       Denial of Due Process

Parks first argues that the Agency erred in instructing Parks' mother that she could not seek reconsideration or bring an appeal on behalf of her son after his benefits were stopped on March 4, 2002. Specifically, rather than providing her with the forms necessary to request reconsideration, the Agency instructed her that she could not request benefit continuation for her son because she was not the representative payee, and only the representative payee could sign the forms to continue benefits or request reconsideration. After advising them that their representative payee had moved from the area and was no longer able to serve in that capacity, she was told to come back with a new representative payee before she could seek reconsideration. No one ever applied to become the new representative payee, and therefore, no request for reconsideration was processed. Parks

asserts that these instructions were erroneous and effectively prevented him from appealing his claim, resulting in a denial of due process.

The Commissioner responds that the records from Parks' first SSI proceeding were discussed during the administrative hearing. Parks' attorney stated that the file contained one exhibit but no treatment records. The ALJ then concluded that there was nothing relevant in the prior claim file, and Parks' attorney did not object when the ALJ fund that he was not going to admit anything from that file. Parks made no request to reopen the prior claim at any time during the proceedings in this case. As he was represented by counsel and could have requested the reopening of his prior claim at any time pursuant to 20 C.F.R. §§ 416.1487(b) and 416.1488, his attempt to do so for the first time in this appeal must be rejected.

Moreover, even assuming that the ALJ should have considered reopening Parks' prior claim on his own initiative, the Court generally lacks jurisdiction to review an ALJ's refusal to reopen a claim. Califano v. Sanders, 430 U.S. 99, 108 (1977). There is an exception, however, where the refusal to reopen a prior decision raises a constitutional question not suited to resolution by administrative process. Blackburn v. Heckler, 615 F.Supp. 908, 912-13 (N.D.Ill. 1985), citing Steebe v. United States Railroad Retirement Board, 708 F.2d 250, 255 (7th Cir. 1983). That being said, this narrow exception does not apply where the argument is that a claimant's due process rights were violated by the agency's initial decision or on the theory that it violates due process to refuse to reopen a decision that itself violated the claimant's due process rights. Lepper v. Apfel, 2000 WL 1222210, at *4 (N.D.Ill. Aug. 3, 2000); Blackburn, 615 F.Supp. at 912, citing Steebe, 702

F.2d at 256. In this circuit, the exception appears to have been acknowledged only with respect to a situation where a claimant asserts that his mental illness precluded him from litigating his claim because it prevented him from proceeding from one administrative level to another in a timely fashion. Id., at 912-13. That is not the claim being made by Parks, who does not claim for himself the mental impairment exception.

Nor does this case present an instance of defective notice by the Agency, despite Parks' best efforts to characterize it as such. In so arguing, he ignores the fact that his mother had previously been deemed incapable of handling his benefits, as well as her own, resulting in the appointment of a representative payee to receive benefits on behalf of both of them. See 20 C.F.R. §§ 404.2001(a) and (b). Under these circumstances and in the absence of a showing that either Parks or his mother had become mentally and physically able to manage their own benefits, only his representative payee had standing to request a continuation of benefits or to appeal the cessation of benefits. See 20 C.F.R. §§ 404.2035 (noting that a representative payee must notify the Agency of any event that will affect the right of the beneficiary to receive benefits) and 404.2055 (noting that representative payment may be stopped where the beneficiary can show that he is mentally and physically able to manage his own benefit payments.) The fact that neither Parks nor anyone acting on his behalf followed up to find a successor representative payee is not error that can be attributed to the Agency. His due process claim must therefore be denied.

II.     Failure to Provide a Complete Record

Parks next argues that although referred to in Dr. Heinrich's evaluation, the psychiatric consultative exam report of Dr. Domingo, the psychological consultative exam report from Stephen Singley, M.A., a Youth Service Bureau report, and a report from the

Marshall Thurgood Learning Center were not part of the record in this case, resulting in an incomplete record. He also complains that test results from Black Hawk College, and the entire file from his 1994 application is also missing from the record on review.

However, Parks has failed to demonstrate that his prior claims folder is in any way relevant to establishing entitlement to benefits on his current claim. Specifically, his prior claim covered a period that ended more than six months prior to the filing of his current claim, and he has failed to demonstrate how these dated records provide substantial evidence of his condition as it existed on October 7, 2002, when he filed his current application for benefits.

Parks submitted his application in October 2002. At that time, he was not receiving any medical care and had failed to attend two scheduled consultative exams. Accordingly, there was no medical evidence establishing that Parks continued to be disabled as of October 2002, and the Court cannot find that the ALJ failed to fully and fairly develop the record by not including his prior claims folder and five-year old documents.

III.   Childhood Disability Status

Parks contends that the ALJ erred in finding that he did not satisfy the requirements for childhood disability prior to August 27, 2003.

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(I). This process involves a three-step analysis: (1) is the child engaged in substantial gainful activity; (2) is the child's impairment or combination of

impairments "severe" in that it causes more than minimal functional limitations; and (3) does the impairment meet, medically equal, or functionally equal an impairment listed in the Regulations. 20 C.F.R. § 416.924. A finding of functional equivalence will be made only if the child has "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). If the answer to the first question is "yes" or if the answer to the second or third questions is "no", then the claimant is not disabled, and the claim must be denied.

Here, Parks does not dispute that his diagnosis of mild mental retardation did not meet or medically equal any listed impairment but rather challenges the finding that his impairment was not functionally equal to a listed impairment. The ALJ acknowledged that Parks had marked limitation in the area of acquiring and using information but found that he had less than marked limitations in the areas of attending and completing tasks and interacting and relating with others. Parks argues that Dr. Stempniak's finding that he could not concentrate on tasks requiring more than three steps and had a history of ADHD is indicative of a marked impairment in ability to attend and complete tasks.

Parks' argument is without merit. In concluding that he had a less than marked limitation in attending and completing tasks, Dr. Boyenga considered Dr. Stempniak's report, as well as his history of mild mental retardation, statements by Parks' mother regarding his abilities, and a Child Function Report. Dr. Heinrich also considered Dr. Stempniak's third party report in finding that Parks had no limitation in attending and completing tasks. Thereafter, Dr. Boyenga and Dr. Heinrich concluded that Parks' condition did not meet or functionally equal any listed impairment. As these opinions were supported by evidence in the record, were not contradicted by any other current medical

evidence, and were not inconsistent with the credible testimony presented during the hearing, the ALJ reasonably relied on them in concluding that Parks did not satisfy the third criteria for establishing childhood disability. See Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005) (noting that an ALJ must consider the supportability of the opinion, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the state agency consultant.)  As such, the ALJ's finding is supported by substantial evidence, and Parks' suggestion to the contrary is without merit.

    IV.    <u>Adult Disability Status</u>

Parks next argues that he has satisfied the requirements for adult disability since August 27, 2003, because he satisfied the requirements of Listing 12.05, 20 C.F.R. Pt. 404, Subpart P, App. 1.  Specifically, he argues that he satisfies subsection C of this listing, which provides in relevant part that the required level of severity is met where there is "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Id.

While it is undisputed that Parks has an IQ score within the required range, he has failed to demonstrate the additional impairment imposing an additional and significant work-related functional limitation.  To the contrary, the only impairment reflected in the record is his diagnosed mild mental retardation.  Drs. Stempniak, Boyenga, and Heinrich were consistent in finding no other impairments, and Dr. Heinrich further noted that Parks was taking no medication and had received no medical treatment.  As substantial evidence supports the ALJ's conclusion that Parks did not have the additional functional impairment required under § 12.05C, this argument must also fail.

**CONCLUSION**

For the reasons set forth herein, the Court finds that the ALJ's decision was supported by substantial evidence. Plaintiff's Motion for Summary Judgment [#11] is DENIED, and the Commissioner's Motion to Affirm [#16] is GRANTED. This matter is now TERMINATED.

ENTERED this 8th day of August, 2006.

                                          s/ Michael M. Mihm
                                          Michael M. Mihm
                                          United States District Judge